IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAUNCE PARKER,            )<br>                           )<br>       Plaintiff,         )<br>                           )<br>    v.                     )<br>                           )<br>RON FOSTER, DENNIS         )<br>BETTENCOURT and FOSTER     )<br>FARMS DAIRY, INC., and     )<br>DOES 1 to 100, inclusive,  )<br>                           )<br>       Defendants.         )<br>_____) | CV F 05-0748 AWI  LJO<br><br>MEMORANDUM OPINION<br>AND ORDER GRANTING<br>MOTION FOR SUMMARY<br>JUDGMENT<br><br>(Documents #35 & #36) |

BACKGROUND

On June 9, 2005, Plaintiff, in pro per, filed a complaint. The first cause of action alleges employment discrimination based on Plaintiff's race. The second cause of action alleges "director's and supervisor's liability." The third cause of action alleges intentional infliction of emotional distress. The fourth cause of action alleges bad faith. The fifth cause of action requests injunctive relief that: (1) prohibits Defendants from engaging in discrimination; (2) requires Defendants to hire women and ethnic minorities at all levels of staffing and management; and (3) prohibits Defendants from receiving benefits from any government program until Plaintiff is made whole, Defendants have terminated relationships with those who engaged in discriminatory acts, and Defendants provide evidence that Defendants hired women and ethnic minorities in proportion to each group's statistical and numeric representation in

Fresno County. Besides the injunction, Plaintiff seeks compensatory damages, general damages, punitive damages, and costs. Plaintiff also requests that the court "set aside the general release."

On May 19, 2006, Defendants filed a motion for summary judgment. Defendants contend that the issues in this action were already litigated in another action, which resulted in a settlement agreement between the parties. Defendants contend that this agreement is enforceable, and Plaintiff has no evidence to prove the settlement is unenforceable.

Plaintiff did not file an opposition or other response to Defendants' motion. Defendants filed evidence showing that their motion was timely served on Plaintiff.

## UNDISPUTED FACTS

Plaintiff Chaunce Parker was formerly employed by Defendant Foster Farms, Inc.

On March 11, 2002, Plaintiff, along with five other former employees of Foster Farms, filed suit in Fresno County Superior Court against Defendants Foster Farms, Ron Foster, and Dennis Bettencourt. The complaint contained several causes of action stemming from alleged mistreatment during employment because of Plaintiffs' race and due to retaliation. The former action included several claims, including claims arising under the California Fair Employment and Housing Act ("FEHA"), in violation of public policy, and claims for intentional infliction of emotional distress.

In the former action, Plaintiff was represented by attorneys Angela Alioto and Joe Veronese. Plaintiff chose these attorneys based on Ms. Alioto's past success in an employment race discrimination case.

On December 4, 2002, the parties attended a mediation with David Rotman in San Francisco. Mr. Rotman was chosen by both sides and is a prominent mediator with a specialty in employment discrimination cases.

Prior to the mediation, Plaintiff and his attorney discussed the purpose of mediation.

Plaintiff was represented at the mediation by both Ms. Alioto and Mr. Veronese. He always had counsel present when speaking with the mediator.

2

The case settled at the mediation. Plaintiff signed a "**GENERAL RELEASE AND SETTLEMENT AGREEMENT**" ("the Agreement"). Plaintiff's counsel made changes to the Agreement prior to Plaintiff signing it and negotiated terms. Plaintiff initialed changes made by his counsel. Plaintiff read the Agreement. Plaintiff understood the amount of money he was going to get pursuant to the Agreement, and understood that the Agreement was binding when he signed it.

Paragraph 2(a) of the Agreement specifies that Plaintiff:

> waive[s], release[s] and forever discharge[s] . . . any and all complaints, claims, charges, liabilities, claims for relief, demands, suits, actions or causes of action, including but not limited to those contained or raised by the Lawsuit (as defined below), whether in law or in equity, which they assert or could assert, at common law or under any statute, rule, regulation, order or law, whether federal, state, or local, or on any grounds whatsoever, including but not limited to, any claims under Title VII of the 1964 Civil Right Act, the California Fair Employment and Housing Act, Government Code § 12900 et seq. [and various other statues specified] . . . against Defendant and any of its former, [sic] owners, . . . employees, . . . including Foster Farms Dairy, Foster Poultry Farms, Ron Foster, [and] Dennis Bettencourt . . . ."

Paragraph 3 of the Agreement, titled "**Civil Code § 1542 Waiver**," provides:

> As a further consideration and inducement for this Agreement, Plaintiffs hereby waive any and all rights under Section 1542 of the California Civil Code or any similar state, local, or federal law, statute, rule, order or regulation he may have with respect to Defendant and any of the Release Parties . . .
>
> Plaintiffs expressly agree that this Agreement shall extend and apply to all unknown, unsuspected and unanticipated injuries and damages as well as those that are now disclosed.

Paragraph 6 of the Agreement specifies that "[i]n consideration of the promises contained herein," Defendants weres to pay Plaintiff two checks, the first in January 2003, the second by December 6, 2003. It also provides that Defendants were to issue a check to Plaintiff's counsel directly as part of the settlement amount to cover Plaintiffs' attorneys' fees.

Paragraph 11 of the Agreement provides that Plaintiff would resign his employment and would not seek re-employment or reinstatement as a condition of the release.

Paragraph 12 of the Agreement provides that Plaintiff will keep the terms of the

Agreement strictly confidential.

Paragraph 17 of the Agreement, titled "**Joint Participation in Preparation of Agreement**," states:

> The parties hereto participated jointly in the negotiation and preparation of this Agreement, and each party has and the opportunity to obtain the advice of legal counsel and to review, comment upon, and redraft this Agreement.  Accordingly, it is agreed that no rule of construction shall apply against any party or in favor of any party.  This Agreement shall be construed as if the parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one party and in favor of another.

Paragraph 20 of the Agreement provides:

> Plaintiffs hereby affirm and acknowledge that they have read the foregoing Agreement, that they have had sufficient time and opportunity to review or discuss it with the counsel of their choice, and that they fully understand and appreciate the meaning of each of its terms, and that it is a voluntary, full and final compromise, release and settlement of all claims, known or unknown, with respect to the claims identified and referred to herein.  The parties to this Agreement represent that this Agreement may be used as evidence in any subsequent proceedings in which any of the parties alleges a breach of this Agreement or seeks to enforce its terms, provision or obligations.

Pursuant to the Agreement, Plaintiff's first lawsuit was dismissed with prejudice.

Pursuant to the Agreement, Defendants paid Plaintiff and his attorneys (on his behalf) all the money set forth in Paragraphs 6 and 7 of the Agreement.

Plaintiff admits he cannot pay back any of the benefits he received under the Agreement, even if ordered to do so by the Court.  Plaintiff believes that he is "entitled" to the money he received without having to pay it back.

Plaintiff alleges that as soon as he left the mediation, he had concerns about the Agreement.  Plaintiff did not inform Defendants of this concern at this time or any time prior to accepting and retaining the benefits paid to him.

Plaintiff contends that he was tired on the day of the mediation because he drove up to San Francisco the morning of the mediation rather than staying in a motel the night before.  Plaintiff was also tired because the mediation lasted into the night.

Defendants were not aware that Plaintiff was tired the day of the mediation.

1  Plaintiff contends that the morning of the mediation, Ms. Alioto became "hostile" to him
2  and remained that way throughout the mediation process.
3  Defendants were not aware that Ms. Alioto was hostile to Plaintiff on the day of the
4  mediation.
5  Plaintiff contends that he has suffered from emotional distress because of alleged
6  mistreatment by Foster Farms since 1990.   The alleged emotional distress has remained constant
7  to this day.
8  Plaintiff has been able to negotiate contracts on his behalf and manage his finances since
9  the mediation.
10  Defendants did not observe nor were they informed of any conduct by Plaintiff at the
11  mediation indicating any lack of capacity to understand the mediation process and/or the
12  Agreement.
13  Plaintiff alleges that his attorneys promised him that certain persons would be terminated
14  from Foster Farms after the settlement and that he would be given a job in the mayor's office.
15  These promises do not appear in the Agreement.   Defendants were not aware of any side
16  promises made to Plaintiff by his counsel.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material

fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

Where a plaintiff fails to oppose a motion for summary judgment, the court may grant summary judgment if the defendant has supported the motion with sufficient papers that on their face do not reveal there is a genuine issue of material fact. Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th Cir. 1993). "If the nonmoving party fails to oppose a summary judgment motion, the district court is not required to search the record sua sponte for some genuine issue of

6

material fact. It may rely entirely on the evidence designated by the moving party showing no such triable issue." Contreras v. Corinthian Vigor Ins. Brokerage, Inc., 103 F.Supp.2d 1180, 1183 (N.D. Cal. 2000); see also Guarino v. Brookfield Township Trustees, 980 F.2d 399, 403 (6th Cir. 1992). It is unfair to the district court, to other litigants, and to the movant to impose a duty on the district court to "search and sift the factual record for the benefit of a defaulting party." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030-31 (9th Cir. 2001).

A pro se party (who is not incarcerated) is held to the same standard in responding to a motion for summary judgment as a represented party. Jacobsen v. Filler, 790 F.2d 1362, 1364-66 (9th Cir.1986).

## DISCUSSION

A settlement agreement is treated as a contract and is subject to all contractual requirements. Huens v. Tatum, 52 Cal.App.4th 259, 264 (1997)[1]; In re Marriage of Hasso, 229 Cal.App.3d 1174, 1181 (1991). The interpretation of a settlement agreement is governed by the same rules that guide the court's review of any other contract. Edwards v. Comstock Insurance Co., 205 Cal.App.3d 1164, 1167-69 (1988). In general, these rules require that: (1) A contract is to be interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful, see Cal. Civ. Code, § 1636; (2) The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity, see Cal. Civ. Code, § 1638; (3) When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, see Cal. Civ. Code § 1639; and (4) the whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other, see Cal. Civ. Code § 1641.

The complaint in this action alleges the underlying acts of discrimination by Defendants.

---

[1] Disapproved on other grounds by Zamora v. Clayborn Contracting Group, Inc., 28 Cal.4th 249, 256 (2002).

The complaint contains no specific allegations regarding the Agreement. Plaintiff did not file an opposition to Defendants' motion for summary judgment. As such, it is difficult to ascertain Plaintiff's position regarding the Agreement. In their briefs, Defendants presume that Plaintiff's position is that the Agreement is unenforceable because it was not enforceable when made or that it can be rescinded. Despite Plaintiff's failure to oppose Defendants' motion for summary judgment, this court cannot grant summary judgment if there is evidence that could support a theory that the Agreement was unenforceable when made or an event has occurred that allows the Agreement to be rescinded.

**A. Enforceable at Inception?**

Defendants contend that there is no evidence that the Agreement is not a lawful, enforceable agreement. Defendants argue that the agreement was supported by consideration and was not unconscionable.

Under California law it is essential for the existence of a contract that there be:

1. Parties capable of contracting;
2. Their consent;
3. A lawful object; and,
4. A sufficient cause or consideration.

Cal. Civ. Code § 1550.

***1. Parties Capable of Contracting***

Under California law, all persons are capable of contracting with the exception of minors, persons of unsound mind, and persons deprived of civil rights. Cal. Civ. Code § 1556. Based on the facts that have been presented to the court, there is no evidence that Plaintiff was not capable of making a contract. Plaintiff was not a minor, of unsound mind, or deprived of his civil rights at the time the contract was made.

Plaintiff did allege at his deposition that he was tired during the mediation. However, a person is of "unsound mind" only if the person is substantially unable to manage his or her own financial resources or resist fraud or undue influence. Cal. Civ. Code § 39(b). " Substantial

inability may not be proved solely by isolated incidents of negligence or improvidence." Id. Plaintiff has provided no evidence indicating that he was substantially unable to manage his financial resources or resist fraud or undue influence at the time of the mediation. All evidence before the court indicates that Plaintiff entered into the Agreement with the assistance of his attorneys and the mediator, and Plaintiff continues to enter contracts and make his own financial decisions. Thus, there is no issue of disputed fact over whether Plaintiff was a person capable of entering into the Agreement.

### 2. Consent

Based on the evidence before the court, there is no evidence that Plaintiff did not consent to the Agreement's terms. It appears that Plaintiff may be attempting to allege that he did not understand the Agreement's terms when he signed the Agreement. Fraud in the inception of a contract occurs when the promisor is deceived as to the nature of his act, so that he does not know what he is signing or does not intend to enter into a contract at all. In such a case, consent is lacking and the contract is void. Larian v. Larian, 123 Cal.App.4th 751, 761 (2004); Ford v. Shearson Lehman American Express, Inc., 180 Cal.App.3d 1011, 1028 (1986).

All evidence before the court in this case is that Plaintiff signed the Agreement knowing what he was signing. Prior to the mediation, Plaintiff and his attorney discussed the purpose of the mediation. Plaintiff was represented by his attorneys at the mediation. Plaintiff understood the amount of money he was going to receive pursuant to the Agreement. Plaintiff understood the Agreement was binding. Thus, there is no disputed issue of fact on whether Plaintiff consented to the Agreement.

It is possible that Plaintiff's position is that he believed that the Agreement contained other terms, such as assurances Defendants would terminate certain persons at Foster Farms and/or Plaintiff would be given a job at the mayor's office. A settlement agreement, like any other contract, is unenforceable if the parties fail to agree on a material term or fail to agree to the same thing in the same sense. Lindsay v. Lewandowski,139 Cal.App.4th 1618, 1622-23 (2006);

Banner Entertainment, Inc. v. Superior Court, 62 Cal.App.4th 348, 358-59 (1998); Weddington Productions, Inc. v. Flick, 60 Cal.App.4th 793, 811 (1998); Cal. Civ. Code § 1580. However, in California, "[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation." Titan Group, Inc. v. Sonoma Valley County Sanitation Dist., 164 Cal.App.3d 1122, 1127 (1985). The parties' undisclosed intent, undisclosed understanding, or subject intent is irrelevant to contract interpretation. Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc., 109 Cal.App.4th 944, 955 (2003); Weddington Productions, Inc., 60 Cal.App.4th at 811. It is enough that a reasonable person would understand that the parties consented to the contract and consented to the same terms in the same sense. Beard v. Goodrich, 110 Cal.App.4th 1031, 1039-40 (2003). Thus, Plaintiff's subjective belief that the Agreement contained provisions not specifically found in the Agreement, does not make the Agreement unenforceable. The outward manifestations of consent exhibited by the parties lead a reasonable person to conclude there was a meeting of the minds and that consent is manifested by the Agreement's terms. All parties signed the written agreement. Generally, one who signs an instrument which on its face is a contract is deemed to assent to all its terms. 1 Witkin, SUMMARY OF CAL. LAW, CONTRACTS, §§ 120-121. In addition, the parties acted upon the agreement. Defendants gave Plaintiff and his attorney the settlement checks and Plaintiff, along with the other plaintiffs in the former action, requested dismissal of the former action. These actions manifest assent to the Agreement. Plaintiff provides no evidence suggesting otherwise. Thus, there is no disputed issue of fact on whether all parties consented to the Agreement.

### 3. Lawful Object

As a general rule, courts will not enforce an illegal bargain. Kashani v. Tsann Kuen China Enterprise Co., Ltd., 118 Cal.App.4th 531, 540 (2004). If the effect of a contract is to accomplish an unlawful purpose, it will be deemed illegal regardless of the parties' intent. Stockton Morris etc. Co. v. Calif. etc. Corp., 112 Cal.App.2d 684, 690 (1952). If a contract is

deemed illegal, it generally will be declared void and unenforceable. Cal. Civ. Code § 1598. There is no evidence in the record establishing that the Agreement was illegal. Legal actions often result in dismissal pursuant to settlement agreements, and there are simply no allegations, let alone evidence, that the Agreement at issue in this action was illegal. Thus, there is no disputed issue of fact on whether the Agreement was lawful.

### *4. Consideration*

It appears from Plaintiff's deposition that one theory of why the Agreement should not be enforced is because Plaintiff was not given sufficient money. "Basic principles of contract law dictate that a party cannot be bound by a promise given without consideration . . . ." Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc., 103 Cal.App.4th 30, 38 (2002). Consideration is defined under California law as:

> Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.

Cal. Civ. Code § 1605.

In this action there is no dispute that Defendants paid Plaintiff and his attorney all money set forth in the Agreement. Plaintiff's position appears to be that he has now determined that this was not enough money. A contract is supported by an adequate consideration if there is some benefit to the promisor or detriment to the promisee. Booth v. Bond, 56 Cal.App.2d 153, 157 (1942); Hayman v. Shoemake, 203 Cal.App.2d 140, 154 (1962). Even if Plaintiff had provided evidence that the amounts he received where not as much as he should have received based on the claims alleged in the former action, Plaintiff undisputably received some money. Because Plaintiff received something of value, there is no disputed issue of fact on whether the Agreement was supported with consideration.

### **5.   Unconscionable**

Even if a contract has all essential elements, a court can still refuse to enforce a contract if

11

it is unconscionable. Cal. Civ. Code § 1670.5; <u>Armendariz v. Foundation Health Psychcare Services, Inc.</u>, 24 Cal.4th 83, 114 (2000); <u>Perdue v. Crocker National Bank,</u> 38 Cal.3d 913, 925 (1985). "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. [citation]." <u>A & M Produce Co. v. FMC Corp.</u>, 135 Cal.App.3d 473, 186 (1982). Unconscionability has both "procedural" and "substantive" elements. <u>Morris v. Redwood Empire Bancorp</u>, 128 Cal.App.4th 1305, 1317 (2005); <u>A & M Produce Co.</u>, 135 Cal.App.3d at 186.

      Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. <u>A & M Produce Co.,</u> 135 Cal.App.3d at 486. The procedural element of unconscionability focuses on two factors: oppression and surprise. <u>Id</u>. The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party. <u>California Grocers Assn. v. Bank of America</u>, 22 Cal.App.4th 205, 214 (1994). "Surprise involves the extent to which the terms of the bargain are hidden in a prolix printed form drafted by a party in a superior bargaining position." <u>Crippen v. Central Valley RV Outlet, Inc.</u>, 124 Cal.App.4th 1159, 1165 (2004).

      Here, Plaintiff has provided no evidence of misconduct on the part of Defendants in the negotiation process. Plaintiff was represented during the mediation by an attorney. The Agreement was not simply a standard form over which Plaintiff had no choice but to sign. Plaintiff's attorneys re-wrote terms in the Agreement, and Plaintiff initialed these changes. A review of the Agreement reveals that it is easy to read, and there is no "fine print" that a reasonable person would have overlooked. All evidence indicates that Plaintiff was able to meaningfully negotiate the Agreement's terms.

      The substantive element of unconscionablity concerns whether a contractual provision reallocates risks in an objectively unreasonable or unexpected manner. <u>Morris v. Redwood</u>

Empire Bancorp, 128 Cal.App.4th 1305, 1317 (2005); Jones v. Wells Fargo Bank, 112 Cal.App.4th 1527, 1539 (2003).  "A provision is substantively unconscionable if it 'involves contract terms that are so one-sided as to shock the conscience, or that impose harsh or oppressive terms.'" Morris, 128 Cal.App.4th 1322 (quoting 24 Hour Fitness, Inc. v. Superior Court, 66 Cal.App.4th 1199, 1213 (1998)).   Based on this evidence before the court, there is no showing that the Agreement's terms shock the conscience.   Plaintiff was represented by an attorney at the mediation, a neutral mediator was present, and the Agreement's terms were not dictated solely by Defendants.   There is no evidence that Plaintiff had no choice but to sign the Agreement.   The Agreement is not one sided and does not impose harsh and oppressive terms.  Plaintiff received a monetary award.   The fact that after the Agreement was signed Plaintiff had second thoughts does not shock the conscience.   There is simply no disputed issue of fact on whether the Agreement was substantively unconscionable.

**B. Rescission**

Plaintiff appears to take the position that even if there is a valid enforceable contract, Plaintiff has grounds to rescind that contract.  Defendants contend that they are entitled to summary judgment because there are no grounds to rescind the Agreement.

Because settlements are contracts, a plaintiff must present contractual grounds for rescission, such as fraud, mutual mistake, or coercion, to set aside a settlement agreement.  Huens, 52 Cal.App.4th at 264.   California Civil Code § 1689 provides the conditions under which a contract can be rescinded:

> (a) A contract may be rescinded if all the parties thereto consent.
> (b) A party to a contract may rescind the contract in the following cases:
>> (1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.
>> (2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds.
>> (3) If the consideration for the obligation of the rescinding party becomes entirely void from any cause.
>> (4) If the consideration for the obligation of the rescinding party, before it

13

>   is rendered to him, fails in a material respect from any cause.
>   (5) If the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault.
>   (6) If the public interest will be prejudiced by permitting the contract to stand.
>   (7) Under the circumstances provided for in [other not relevant Code Sections are met].

Cal. Civ. Code § 1689. California Civil Code § 1691 provides the procedure to rescind a contract:

>   Subject to Section 1693, to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind:
>   (a) Give notice of rescission to the party as to whom he rescinds; and
>   (b) Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so.
>   When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both.

Cal. Civ. Code § 1691.

### *1. Return of Funds*

Defendants contend that Plaintiff cannot rescind the Agreement because Plaintiff is unable or unwilling to restore the funds Defendants gave to Plaintiff pursuant to the Agreement.

In order to obtain rescission, a plaintiff must to restore to the defendant everything of value received from the defendant under the contract the plaintiff seeks to rescind. Cal.Civ.Code § 1691(b); Star Pacific Investments, Inc. v. Oro Hills Ranch, Inc., 121 Cal.App.3d 447, 457-58 (1981). The general rule is a party must rescind the entire contract; the party may not retain the rights it deems desirable while repudiating the remainder. Simmons v. Cal. Institute of Technology, 34 Cal.2d 264, 275 (1949); Yeng Sue Chow v. Levi Strauss & Co., 49 Cal.App.3d 315, 326 (1975). There is no specific required form of notice and offer of restoration and it need not be formal and explicit. It is enough if the intent to rescind is shown. Donovan v. RRL Corp., 26 Cal.4th 261, 278 n. 5 (2001).

14

In this case, rescission means that Plaintiff would return to Defendants all money received as part of the settlement agreement, and Plaintiff could reinstate his legal action against Defendants. There is no evidence that Plaintiff has notified Defendants of his intent to rescind the contract. Plaintiff has made no offer to return Defendants' money. In fact, the only evidence before the court shows that Plaintiff is unable and unwilling to return the funds to Defendants. Thus, summary judgment is appropriate because there is no disputed issue of fact on whether Plaintiff can or will return the money. Plaintiff cannot rescind the Agreement because he is unable or unwilling to return the funds he received as a result of the Agreement.

### 2. *Mistake, Duress, Fraud, or Unsound Mind*

Defendants contend recision is not appropriate because there is no evidence Plaintiff entered into the contract under duress, because of fraud, or as a result of Plaintiff's unsound mind. A party to a contract may rescind the contract if the consent was given by mistake or the consent of the party rescinding was obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds. Cal.Civ.Code § 1689(b)(1). It is unclear the exact nature of Plaintiff's claims of mistake, duress, fraud, or unsound mind.

It is possible that Plaintiff is attempting to allege that he mistakenly gave his consent to the Agreement because he thought it included additional terms. For example, Plaintiff has alleged he was promised that those who had committed alleged acts of discrimination would be fired and he would be given another job. These additional promises were not contained in the Agreement. Defendants provide undisputed evidence that they were unaware of these additional provisions. California law allows rescission of contract for a unilateral mistake only when the unilateral mistake is known to the other contracting party and is encouraged or fostered by that party. Merced County Mut. Fire Ins. Co. v. State of California, 233 Cal.App.3d 765, 772 (1991). No law requires that parties represented by attorneys and dealing at arms length have a duty to explain to each other the terms of a written contract where the language of the contract is clear.

15

Brookwood v. Bank of America, 45 Cal.App.4th 1667, 1673-74 (1996); Rowland v. PaineWebber Inc., 4 Cal.App.4th 279, 286 (1992).  Here, there is no evidence that Defendants did anything to lead Plaintiff to believe that the Agreement contained terms not mentioned in the Agreement.  Thus, even if Plaintiff gave his consent to the Agreement mistakenly believing that it contained other terms, Plaintiff has not meet the standard for rescission.

California Civil Code § 1569 defines duress as follows:

> Duress consists in:
> 1. Unlawful confinement of the person of the party, or of the husband or wife of such party, or of an ancestor, descendant, or adopted child of such party, husband, or wife;
> 2. Unlawful detention of the property of any such person; or,
> 3. Confinement of such person, lawful in form, but fraudulently obtained, or fraudulently made unjustly harassing or oppressive.

Cal.Civ.Code § 1569.  Plaintiff has offered no evidence that Defendants' conduct caused him to sign the Agreement under duress.  Plaintiff fails to clearly explain what conditions Defendants put him under that created duress.  It appears Plaintiff claims duress because he was tired the day of the mediation and Defendants strongly suggested Plaintiff sign the Agreement.  The undisputed facts show that Defendants did not know Plaintiff was tired, and it was Plaintiff's choice, not Defendants' choice, for Plaintiff to drive to San Francisco the morning of the mediation.  The undisputed evidence does not show Defendants unlawfully imprisoned Plaintiff or anyone in his family or forced Plaintiff to stay at the mediation against his will.  Thus, the undisputed facts do not show duress.

California law defines fraud as follows:

> ACTUAL FRAUD, WHAT. Actual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:
> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
> 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
> 3. The suppression of that which is true, by one having knowledge or belief of the fact;
> 4. A promise made without any intention of performing it; or,

16

     5. Any other act fitted to deceive.

Cal.Civ.Code § 1572.  Plaintiff has provided no evidence of an untrue promise given to him by Defendants that induced him to sign the Agreement.  At best, the record indicates that Plaintiff may have been told by his attorneys that certain Forster Farms employees would be terminated and he would be given a job opportunity with the major's office.  Even assuming these statements were made by Plaintiff's attorneys, they do not constitute fraud on the part of Defendants.  In addition, the Agreement clearly does not include these terms.  There is no justifiable reliance on a fraudulent statement by a third party where the plaintiff could have read the contract and realized the statement was not contained in the contract.  Hadland v. NN Investors Life Ins. Co., 24 Cal.App.4th 1578, 1586 (1994).  Thus, the Agreement cannot be rescinded based on Defendants' fraud.

     California law provides this definition of undue influence:

> UNDUE INFLUENCE, WHAT. Undue influence consists:
> 1. In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him;
> 2. In taking an unfair advantage of another's weakness of mind; or,
> 3. In taking a grossly oppressive and unfair advantage of another's necessities or distress.

Cal.Civ.Code § 1575.  Under California law the burden of proving a claim of undue influence is on the claimant when there is no confidential relationship between the contracting parties. Olam v. Congress Mortg. Co., 68 F.Supp.2d 1110, 1139-40 (N.D.Cal.1999) (citing Dorn v. Pichinino, 105 Cal.App.2d 796 (1951)).  "Undue influence . . . is a shorthand legal phrase used to describe persuasion which tends to be coercive in nature, persuasion which overcomes the will without convincing the judgment." Odorizzi v. Bloomfield School Dist., 246 Cal.App.2d 123, 129 (1966).  "In essence undue influence involves the use of excessive pressure to persuade one vulnerable to such pressure, pressure applied by a dominant subject to a servient object." Id. at 131.  "In combination, the elements of *undue susceptibility* in the servient person and *excessive pressure* by the dominating person make the latter's influence undue, for it results in the apparent

will of the servient person being in fact the will of the dominant person." Id. (emphasis added). In determining if undue influence occurred, the should consider facts such as:

> the substantial weakness of the person influenced or the excessive strength of the other party, taking into account factors such as the transaction having occurred at an unusual or inappropriate time or place, an insistent demand that the business be concluded immediately without recourse to independent advisers and an extreme emphasis on the negative consequences of delay, the concurrence of several persons in influencing the weaker party, and the absence of an independent adviser for that person.

In re Marriage of Bonds, 24 Cal.4th 1, 28 n. 11 (2000).

There are no disputed issues of fact on whether Plaintiff was subjected to undue influence. Plaintiff has failed in his burden to come forward with *any* facts showing undue influence. At his deposition, Plaintiff asserted that he was tired because he had awoken very early to drive to the mediation in San Francisco, which started at 9:00 a.m, and the mediation continued until somewhere between 9:00 p.m. and 12:00 a.m that night. Plaintiff also asserted that his own attorney became hostile the morning of the mediation. Finally, Plaintiff asserted that he believed various employees who had discriminated against him would be fired. None of these facts and allegations are sufficient to show undue influence. Plaintiff was represented by attorneys at all relevant times. The mediation was supervised by a neutral mediator. While there appears to have been some suggestion that all parties wanted to reach an agreement that day, there is no evidence that Plaintiff was prohibited from halting the negotiations to obtain sleep and/or gather additional information. "There are second thoughts to every bargain, and hindsight is still better than foresight. Undue influence cannot be used as a pretext to avoid bad bargains or escape from bargains which refuse to come up to expectations. . . . If we are temporarily persuaded against our better judgment to do something about which we later have second thoughts, we must abide the consequences of the risks inherent in managing our own affairs." Odorizzi, 246 Cal.App.2d at 132. At best, the evidence could lead to the conclusion that this was a bad bargain from Plaintiff's perspective. This evidence is insufficient to create a disputed issue of fact on whether there was undue influence. Plaintiff's belief in hindsight that he made a

bad bargain is insufficient grounds for setting aside the Agreement. Thus, Defendants are entitled to summary judgment.

**ORDER**

Based on the above memorandum opinion, the court ORDERS that:

1. Defendants' motion for summary judgment is GRANTED; and
2. The Clerk of the Court is DIRECTED to enter judgment in favor of Defendants.

IT IS SO ORDERED.

**Dated:   July 24, 2006**                         /s/ Anthony W. Ishii
9h0d30                                         UNITED STATES DISTRICT JUDGE